UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY HAROLD STEFANSKI,

               Petitioner,

                                       CASE NO. 4:20-CV-11714
v.                                HON. DENISE PAGE HOOD

GARY MINIARD,[1]

               Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION
FOR A WRIT OF HABEAS CORPUS,
BUT GRANTING A CERTIFICATE OF APPEALABILITY**

## I.    Introduction

This is a habeas case brought pursuant to 28 U.S.C. § 2254.   Michigan

prisoner Jeffrey Harold Stefanski ("Petitioner") was convicted of two counts of

first-degree criminal sexual conduct ("CSC-I"), MICH. COMP. LAWS § 750.520b,

---

[1]Petitioner is currently confined at the Saginaw Correctional Facility in Freeland, Michigan.   *See* Petitioner's Offender Profile, Michigan Department of Corrections Offender Tracking Information System ("OTIS"), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=981576. Consequently, the proper respondent in this case is the warden at that facility who has custody of Petitioner.   *See* 28 U.S.C. § 2243; 28 U.S.C. foll. § 2254, Rule 2(a); Fed. R. Civ. P. 81(a)(4).   Accordingly, the Court amends the caption to name Gary Miniard as the respondent.

and one count of second-degree criminal sexual conduct ("CSC-II"), MICH. COMP.

LAWS § 750.520c, following a jury trial in the Chippewa County Circuit Court.

He was sentenced to concurrent terms of 11 to 40 years imprisonment on the CSC-

I convictions and a concurrent term of 2 to 15 years imprisonment on CSC-II

convictions in 2016.   In his pleadings, Petitioner raises claims concerning the

effectiveness of trial counsel.   For the reasons set forth herein, the Court denies

the habeas petition, but grants a certificate of appealability.

## II.    Facts and Procedural History

Petitioner's convictions arise from his sexual assault of a teenage boy at his

cabin and house in Chippewa County, Michigan in 2011.   The Michigan Court of

Appeals described the underlying facts, which are presumed correct on habeas

review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.

2009), as follows:

> Stefanski, who was 46 years old at the time of trial, owned a house
> and cabin in northern Michigan. According to the victim, Stefanski
> allowed him and other teenage boys to use his house and cabin to
> drink alcohol and party. The victim testified at trial that on two
> occasions Stefanski inserted his penis into the victim's mouth while
> the victim was so intoxicated that he claimed "there wasn't really
> anything I could do. I tried pushing him off but I literally had no
> strength in me." The victim testified that on a different occasion,
> Stefanski put his penis against the victim's anus while the victim was
> intoxicated and nearly unconscious. The victim rolled away before
> penetration occurred. Based on this and other testimony, the jury

found Stefanski guilty of two counts of CSC-I and one count of CSC-II.

*People v. Stefanski*, No. 334510, 2018 WL 5276411, *1 (Mich. Ct. App. Oct. 23, 2018) (unpublished).

Following his convictions and sentencing, Petitioner filed a motion for new trial or *Ginther* hearing alleging that trial counsel was ineffective in several respects.   The trial court conducted a hearing, determined that Petitioner's attorneys were not ineffective, and denied relief.   ECF No. 5-18.   Petitioner then filed an appeal of right with the Michigan Court of Appeals raising several ineffective assistance of trial counsel claims.   The court denied relief on those claims and affirmed his convictions.   *Stefanski*, 2018 WL 5276411 at *1-7. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.   *People v. Stefanski*, 503 Mich. 1002, 924 N.W.2d 552 (2019).

Petitioner then filed his federal habeas petition raising the following claims:

I.    Trial counsel provided ineffective assistance by failing to conclusively establish the factual predicate for the defense's motive to falsify theory.

II.   Trial counsel provided ineffective assistance by failing to lodge a correct objection to hearsay testimony from the victim's mother.

3

Respondent filed an answer to the habeas petition contending that it should be

denied because the claims lack merit and do not warrant habeas relief.   Petitioner

filed a reply to that answer.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal

courts must use when considering habeas petitions brought by prisoners

challenging their state court convictions.   The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim--
>
> (1)   resulted in a decision that was contrary to, or involved an
>       unreasonable application of, clearly established Federal law,
>       as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable
>
>       determination of the facts in light of the evidence presented
>
>       in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

4

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal

5

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).   Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.   Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).   A petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).   Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent.   Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief.  *Parker v. Matthews*, 567 U.S. 37, 48-

49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam).   The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision.   *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.   *See* 28 U.S.C. § 2254(e)(1).   A habeas petitioner may rebut this presumption only with clear and convincing evidence.   *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).   Moreover, habeas review is "limited to the record that was before the state court."   *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Ineffective Assistance of Counsel - Defense Theory

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to establish the factual predicate for the defense's motive to falsify theory.   In particular, he asserts that trial counsel failed to properly cross-examine the attorney who represented the victim on his probation violation case with state court records showing that the victim faced probation violation charges at the time he disclosed the sexual assaults. Respondent contends that this claim lacks merit.

8

The Sixth Amendment to the United States Constitution guarantees a
criminal defendant the right to the effective assistance of counsel.   In *Strickland*
*v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test
for determining whether a habeas petitioner has received ineffective assistance of
counsel.   First, a petitioner must prove that counsel's performance was deficient.
This requires a showing that counsel made errors so serious that he or she was not
functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466
U.S. at 687.   Second, the petitioner must establish that counsel's deficient
performance prejudiced the defense.   Counsel's errors must have been so serious
that they deprived the petitioner of a fair trial or appeal.   *Id*.

To satisfy the performance prong, a petitioner must identify acts that were
"outside the wide range of professionally competent assistance."   *Id*. at 690.   The
reviewing court's scrutiny of counsel's performance is highly deferential.   *Id*. at
689.   There is a strong presumption that trial counsel rendered adequate
assistance and made all significant decisions in the exercise of reasonable
professional judgment.   *Id.* at 690.   The petitioner bears the burden of
overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the

9

proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Strickland* standard, and denied relief. The court explained:

> Stefanski first argues that his trial counsel was ineffective for not
> using court records during trial to impeach a witness, which would
> have supported Stefanski's theory that the victim falsely accused him

of sexual assault to obtain leniency in an unrelated probation violation case. We disagree.

Stefanski insists that the timing of the victim's disclosure of sexual assault is important. The victim's first disclosure was to Jennifer France, the defense attorney appointed to represent the victim on his pending probation violation case. The victim readily admitted at trial that his sexual assault disclosures were made to his attorney, and later to the police, after he had been charged with violating his probation, but before he was sentenced. However, the victim denied that he was trying to use the sexual assault claims for leniency in his probation violation case or that he expected to "get anything out of it."

Although France's testimony at trial was generally consistent with the victim's testimony of the disclosure, France provided slightly different testimony regarding the circumstances of the disclosure. Unlike the victim, France denied that the victim had a "pending" criminal matter when she was told about the sexual assault. On cross examination, France claimed the victim "was on probation but he wasn't charged with any new crimes" when the sexual assault was disclosed to the police.

Stefanski argues that his trial counsel was ineffective for failing to impeach France's testimony with court records that clearly showed the disclosure to France occurred after the probation violation warrant was filed. This failure to impeach France, Stefanski argues, undermined Stefanski's "motive-to-falsify theory" and enabled the prosecution to inaccurately state during rebuttal closing argument: "We all heard what Ms. France said. She said 'He was not in trouble when he told.' He came in, talked to Ms. France, talked to Detective Postma and left. He wasn't locked up. He wasn't in jail." On appeal, Stefanski uses the victim's probation records admitted at the Ginther hearing showing that the victim was indeed facing charges of violating his probation when he reported the sexual assault on August 5, 2014.

11

Defense counsel's performance was not constitutionally deficient for failing to impeach France with court records from the victim's probation file. Although defense counsel could have impeached France with these records, the fact remains that the victim himself readily admitted that he was facing a probation violation when he disclosed the sexual assault. Therefore, the probation documents would have demonstrated that the victim testified truthfully, bolstering his credibility. Further, the significance of impeaching France on this issue was diminished by France's acknowledgement that she asked the trial court handling the probation violation sentencing to impose a lenient sentence because of the victim's cooperation in the sexual assault case. Thus, Stefanski's trial counsel elicited ample evidence to support the defense's "motive-to-falsify theory," and a failure to impeach France on this issue was not deficient performance.

Even if trial counsel was deficient in this regard, Stefanski cannot demonstrate prejudice. Counsel's performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich. App. at 667. Stefanski argues that this case was strictly a credibility contest between him and the victim, and the failure to present information that would impact the credibility assessment was fatal to his defense. However, apart from information about the victim's possible motive, there were other witnesses who corroborated the victim's testimony regarding the sexual assault. Specifically, three other young men testified that they had visited Stefanski's house and cabin, had access to alcohol and pornography in a sexually charged environment in which Stefanski made sexual remarks, encouraged them to wear only board shorts, and had them watch or participate in a game where Stefanski and others would masturbate and "race" to see who could ejaculate first. Defendant would also jokingly grab at their crotches. One of the witnesses testified to having seen defendant grasp the victim's penis, and one night he walked downstairs to observe the victim lying on a bench and defendant in the corner masturbating. The witness recalled that the victim looked sweaty and ravaged, with a blanket

on his lower half and no shirt, and defendant was nude. Thus, the
jury considered other evidence that corroborated the victim's
testimony, and the contradiction about the timing of the victim's
probation violation proceedings was not outcome determinative.

*Stefanski*, 2018 WL 5276411 at *2-3 (footnotes omitted).

The state court's decision is neither contrary to Supreme Court precedent

nor an unreasonable application of federal law or the facts.   Well-established

federal law requires that defense counsel conduct a reasonable investigation into

the facts of a defendant's case or make a reasonable determination that such

investigation is unnecessary.   *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S.

at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007).   The duty to

investigate "includes the obligation to investigate all witnesses who may have

information concerning . . . guilt or innocence."   *Towns v Smith*, 395 F.3d 251,

258 (6th Cir. 2005).   That being said, decisions as to what evidence to present

and whether to call certain witnesses are presumed to be matters of trial strategy.

When making strategic decisions, counsel's conduct must be reasonable.   *Roe v.

Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

The failure to call witnesses or present other evidence constitutes ineffective

assistance of counsel only when it deprives a defendant of a substantial defense.

*Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*,

13

303 F.3d 720, 749 (6th Cir. 2002).

In this case, even assuming that counsel erred by failing to impeach France's testimony with records showing that the victim was facing probation violation charges when he disclosed the sexual assaults,[2] Petitioner fails to demonstrate that he was prejudiced by counsel's conduct.   First, he was not deprived of a substantial defense.   The victim admitted that he was on probation and that he was facing probation violation charges when he first disclosed the sexual assaults to attorney France and investigating detective Postma.   Trial counsel was thus able to argue from such testimony that the victim brought the allegations against Petitioner in order to curry favor in his own legal proceedings. Trial counsel also challenged the victim's credibility and highlighted inconsistences in his testimony, cross-examined prosecution witness and discussed discrepancies in their testimony, presented several witnesses who testified that they never saw Petitioner act inappropriately around them or the boys at his residences, had Petitioner testify in his own defense in which he admitted that 18-year-olds drank at his residences but denied the sexual assault allegations.

_____

[2]The Court notes that France's testimony was somewhat confusing because she accurately testified that the victim was on probation and did not have new criminal charges pending at time of his disclosure, but also seemed to indicate that he did not have a pending probation violation.

Trial counsel contended that the victim made the allegations to help him in his own legal matters, but also attacked the prosecution's case, raised a reasonable doubt defense, and made other valid arguments in support of the defense case based upon the testimony, or lack thereof, presented at trial.   The fact that trial counsel was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Second, the prosecution presented significant evidence of Petitioner's guilt, in addition to the victim's testimony, such as corroborating testimony from others who attended the gatherings at Petitioner's residences in which they described underage drinking and inappropriate sexual activities that occurred during the period at issue in this case.   Petitioner fails to show that trial counsel was ineffective under the *Strickland* standard.   More importantly, for purposes of habeas review, he fails to show that the state court's ruling to that effect is unreasonable.   Habeas relief is not warranted on this claim.

### B.     Effectiveness of Trial Counsel - Hearsay Objection

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to correctly object to alleged hearsay from the

victim's mother.    Respondent contends that this claim lacks merit.

As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.    *Strickland*, 466 U.S. at 687.

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Strickland* standard, and denied relief.    The court explained:

> Next, Stefanski argues that his trial counsel was ineffective for failing to properly object to hearsay testimony from the victim's mother. We disagree.
>
> The victim's mother testified about a conversation she had with her son during a phone call while he was in jail. During the call, the victim was crying and told her that Stefanski had done "something to him," implying that Stefanski sexually assaulted him. The challenged brief exchange elicited during direct examination provided:
>
> > [Prosecutor]: What did he tell you?
> >
> > [Victim's Mother]: He told me that what um, -- he showed me -- he called from the jail -- and he was crying. He said you know I told what happened. He explained a bit about -- because I didn't know all the details because of where he was calling me from about what had -- something had happened between him and Mr. Stefanski.
> >
> > Prosecutor: To the extent that he shared the details; what did he say?
> >
> > Victim's Mother: I'm sorry?

16

> Prosecutor: To the extent that he shared details with
> you; what did he say?
>
> Victim's Mother: Just that he kind of -- he didn't come
> right out and say it but um, he said something similar to
> it was -- gosh it was a while ago, that had did
> something to him. Mr. Stefanski had [done] something
> to [the victim] and then I was crying. I was really upset.
> I don't remember much of the conversation because it
> was hard to hear that from your kid -- you can't even
> hold him.
>
> Prosecutor: Did he imply it was sexual?
>
> Victim's Mother: Yes. It's not something I connected
> the dots on with my son. [Emphasis added.]

The trial court initially sustained defense counsel's timely objection to the mother's testimony as hearsay. However, the trial court reversed its decision following the prosecutor's argument that the statement was not hearsay because it was a prior consistent statement under MRE 801(d). Because defense counsel claimed in his opening statement that the victim's testimony was a lie, the trial court agreed and allowed the testimony.

Stefanski argues that his trial counsel failed to make the proper objection to the mother's testimony. However, even assuming the mother's vague summary of her conversation with her son constitutes a statement, hearsay was the proper objection. *See* MRE 801(c). A prior consistent statement is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." MRE 801(d)(1)(B). Stefanski suggests that his trial counsel was deficient for failing to inform the trial court that the statement could not be a prior consistent statement because under MRE 801(d)(1)(B), the declarant had a motive to

17

fabricate when he made the statement. According to *People v. Jones*, 240 Mich. App. 704, 707; 613 N.W.2d 411 (2000), "the prior consistent statement must be made prior to the time that the supposed motive to falsify arose."

We agree that, assuming the mother's summary constitutes a statement under MRE 801(a), the testimony was inadmissible hearsay because MRE 801(d)(1)(B) was not applicable. Here, the motive to fabricate arose when the victim was charged with violating his probation. The victim's mother stated that the victim told her about the sexual assault after he was jailed on the probation violation. Thus, defense counsel could have properly argued that the statements from jail were inadmissible under MRE 801(d)(1) because the consistent statement was made after there was a motive to make false allegations. Although defense counsel objected to the testimony on hearsay grounds, he failed to raise this more specific hearsay objection.

However, Stefanski cannot show that the testimony from the victim's mother prejudiced him. As already described, the mother's recollection of the victim's disclosure was extremely vague and it is doubtful that the jury gave it much weight, particularly in light of more definitive testimony from other witnesses like France and the investigating detective. Further, given that her testimony was that the victim disclosed the sexual assault after he was jailed for violating his probation, her testimony actually bolstered Stefanski's motive-to-falsify theory. Therefore, Stefanski was not denied the effective assistance of counsel.

*Stefanski*, 2018 WL 5276411 at *4-5 (footnote omitted).

The state court's denial of relief is neither contrary to Supreme Court

precedent nor an unreasonable application of federal law or the facts.   Even

assuming that trial counsel erred in failing to raise the more specific hearsay

objection, Petitioner fails to show that he was prejudiced by counsel's conduct. The mother's testimony was vague, non-descriptive, and duplicative of testimony from other witnesses, including attorney France and investigating detective Postma.   Additionally, given that the mother's testimony recounted statements that the victim made to her after he was jailed for violating his probation, her testimony supported the defense theory that the victim had a motive to fabricate the sexual assault allegations.   Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard.   Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on his claims.   Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).   A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or

wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).   "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Having considered the matter, the Court finds that Petitioner raises issues that deserve further appellate review.   Accordingly, the Court **GRANTS** a certificate of appealability as to Petitioner's ineffective assistance of counsel claims.   The case before this Court is **CLOSED**.

**IT IS SO ORDERED**.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated:   September 6, 2023